UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY SOUZA NUNES,<br><br>    Plaintiff,<br><br> -against-<br><br>UNITED BROTHERHOOD OF CARPENTERS AND<br>JOINERS OF AMERICA, NEW YORK CITY DISTRICT<br>COUNCIL OF CARPENTERS AND JOINERS OF<br>AMERICA, COMMODORE CONSTRUCTION CORP.,<br>AMERICAN WOOD INSTALLERS INC., SUPERIOR<br>ACOUSTICS INC., JONATHAN METAL & GLASS LTD.,<br>EUROTECH CONSTRUCTION CORP., CIVETTA<br>COUSINS JV LLC, CORD CONSTRACTING CO., INC.,<br>NAVILLUS TILE, INC. dba NAVILLUS CONTRACTING<br>and JOSEPH A. GEIGER,<br><br>    Defendants. | Case No. 20-cv-1092 (ALC) |

## DISTRICT COUNCIL DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

SPIVAK LIPTON LLP
1700 Broadway, 21st Floor
New York, NY 10019
212-765-2100
*Attorneys for the District Council Defendants*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................................1

ALLEGATIONS OF THE AMENDED COMPLAINT ................................................................2

ARGUMENT..................................................................................................................................3

POINT I
PLAINTIFF'S LMRDA CLAIM SHOULD BE DISMISSED ......................................................3

   A.  Plaintiff's LMRDA claim regarding CBA ratification is time-barred.................................4

   B.  Plaintiff's LMRDA claim regarding CBA ratification fails on the merits .........................5

   C.  Plaintiff's claims under LMRDA §§ 101(a)(2) and 609 should be dismissed because
      advocating a wildcat strike is not protected activity...........................................................6

      1.  Plaintiff indisputably engaged in the conduct for which he was disciplined ..........9

      2.  Plaintiff's attempts to justify his conduct are unavailing......................................10

   D.  Plaintiff's claim under LMRDA § 101(a)(5) should be dismissed because he fails to
      plead facts that he did not receive a full and fair hearing on his admitted misconduct.....11

      1.  Plaintiff's attacks on the District Council's Trial Procedures are misguided .......12

      2.  The affidavit of Anthony Madaio was properly admitted at
         Plaintiff's union trial ...........................................................................................13

      3.  Plaintiff fails to adequately allege Trial Committee bias......................................14

      4.  Plaintiff's allegations on trial evidence are misplaced .........................................15

   E.  Plaintiff fails to allege exhaustion of internal union remedies .........................................16

POINT II
PLAINTIFF'S DFR AND HYBRID LMRA § 301-DFR CLAIMS FAIL ...................................17

   A.  Plaintiff's new DFR claim regarding negotiations fails as a matter of law ......................17

1.  Plaintiff's claim regarding CBA negotiations/ratification is time-barred..............18

2.  Plaintiff fails to state a claim for violation of the DFR in negotiating the CBA ...18

B.  Plaintiff's claim that the unions and employers colluded to blacklist him fails ...............21

C.  EST Geiger cannot be a defendant to a duty of fair representation claim .........................23

POINT III
THE REQUEST FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED....................24

CONCLUSION............................................................................................................................25

# TABLE OF AUTHORITIES[*]

**Cases**                                                                                                            **Page**

Air Line Pilots Ass'n Int'l v. O'Neill,
    499 U.S. 65 (1991).................................................................................................................19

Anderson News, L.L.C. v. Am. Media, Inc.,
    680 F.3d 162 (2d Cir. 2012)..................................................................................................19

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)................................................................................................................2

Bejjani v. Manhattan Sheraton Corp.,
    2013 U.S. Dist. Lexis 90467 (S.D.N.Y. June 27, 2013),
    aff'd, 567 Fed App'x 60 (2d Cir. 2014)......................................................................20, 22, 23

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)................................................................................................................2

Bernstein v. Nolan,
    1990 U.S. Dist. Lexis 7816 (S.D.N.Y. June 26, 1990).............................................................7

Bey v. Welsbach Elec. Corp.,
    38 F. App'x 690 (2d Cir. 2002) .............................................................................................20

Caldarera v. Int'l Longshoremen's Ass'n, Local 1,
    2018 U.S. Dist. Lexis 111135 (S.D.N.Y. July 3, 2018),
    aff'd, 765 F. App'x 483 (2d Cir. 2019)...................................................................................23

Carrion v. Enter. Ass'n,
    227 F.3d 29 (2d Cir. 2000)...............................................................................................17, 21

Citibank, N.A. v. Citytrust,
    756 F.2d 273 (2d Cir. 1985)..................................................................................................25

Cloke v. Adams,
    2010 U.S. Dist. Lexis 78758 (S.D. Ohio May 27, 2010),
    report of magistrate adopted, 2010 U.S. Dist. Lexis 78774 (S.D. Ohio Aug. 4, 2010)...........17

Cohen v. Flushing Hosp.,
    68 F.3d 64 (2d Cir. 1995)......................................................................................................18

---

[*] With respect to the Court's Individual Practices (Feb. 3, 2020) Rule 2.H, citations to judicial opinions unpublished in official reporters are cited using the Lexis citations because counsel does not subscribe to the Westlaw service.

Connor v. Elmhurst Dairy, Inc.,
    2015 U.S. Dist. Lexis 120497 (E.D.N.Y. July 31, 2015) ..........................................................4

Corley v. Farrell,
    2016 U.S. Dist. Lexis 93813 (E.D.N.Y. July 18, 2016) ...........................................................7

Cover v. Am. Postal Workers Union,
    357 F. App'x 336 (2d Cir. 2009) .............................................................................................21

Damone v. Teamsters Local 804,
    2018 U.S. Dist. Lexis 224412 (E.D.N.Y. Oct. 30, 2018) ........................................................25

DelCostello v. Int'l Bhd. of Teamsters,
    462 U.S. 151 (1983) ................................................................................................................18

Dillard v. SEUI Local 32BJ,
    2015 U.S. Dist. Lexis 152502 (S.D.N.Y. Nov. 6, 2015) .........................................................18

Emporium Capwell Co. v. Western Addition Cmty. Org.,
    420 U.S. 50 (1975) ..................................................................................................................8

Flanigan v. Int'l Bhd. of Teamsters, Local No. 671,
    942 F.2d 824 (2d Cir. 1991) ...................................................................................................22

Ford Motor Co. v. Huffman,
    345 U.S. 330 (1953) ........................................................................................................... 20-21

Forkin v. Local 804 Union (IBT),
    394 F. Supp. 3d 287 (E.D.N.Y. 2019) ....................................................................................23

Frye v. United Steelworkers of Am.,
    767 F.2d 1216 (7th Cir. 1985) ...............................................................................................15

Georgopoulos v. Int'l Bhd. of Teamsters,
    942 F. Supp. 883 (S.D.N.Y. 1996),
    aff'd, 116 F.3d 1472 (2d Cir. 1997) ..................................................................................12, 15

Goodman v. Port Auth. of N.Y. & N.J.,
    2011 U.S. Dist. Lexis 86010 (S.D.N.Y. Aug. 4, 2011) ..........................................................22

Gurton v. Arons,
    339 F.2d 371 (2d Cir. 1964) .....................................................................................................5

Hansen v. Guyette,
    814 F.2d 547 (8th Cir. 1987) ...................................................................................................9

Hudson v. Wine Merchants,
    1996 U.S. Dist. Lexis 18663 (W.D.N.Y. Dec. 11, 1996) ......................................................22

Int'l Bhd. of Boilermakers v. Hardeman,
    401 U.S. 233 (1971)..................................................................................... 7, 10 & n.5, 11, 15

Jacque v. Wirt,
    377 F. App'x 50 (2d Cir. 2010) ...............................................................................................16

Johnson v. NFL Players Ass'n,
    2018 U.S. Dist. Lexis 225346 (S.D.N.Y. Oct. 3, 2018),
    appeal filed, Aug. 29, 2019, No. 19-2734 (2d Cir.) .................................................................20

Jolly v. Gorman,
    428 F.2d 960 (5th Cir. 1970) .....................................................................................................8

Kent v. N.Y. State Pub. Employees Fed.,
    2020 U.S. Dist. Lexis 55211 (N.D.N.Y. Mar. 31, 2020),
    appeal filed, May 1, 2020, No. 20-1454 (2d Cir.) ............................................................ 14-15

Legutko v. Local 816, Int'l Bhd. of Teamsters,
    853 F.2d 1046 (2d Cir. 1988).....................................................................................................4

Marquez v. Screen Actors Guild,
    525 U.S. 33 (1998)...................................................................................................................19

Maxwell v. United Auto,
    489 F. Supp. 745 (C.D. Ill. 1980) ..............................................................................................8

Mayle v. Laborer's Int'l Union, Local 1015,
    866 F.2d 144 (6th Cir. 1988) .....................................................................................................8

Morris v. Local 819, Int'l Bhd. of Teamsters,
    169 F.3d 782 (2d Cir. 1999).....................................................................................................23

NLRB v. Allis-Chalmers Mfg. Co.,
    388 U.S. 175 (1967)........................................................................................................7, 8, 12

NLRB v. Am. Nat'l Ins. Co.,
    343 U.S. 395 (1952).................................................................................................................25

NLRB v. Indus. Union of Marine & Shipbuilding Workers of Am., Local 22,
    391 U.S. 418 (1968).................................................................................................................16

Parks v. Int'l Bhd. of Elec. Workers,
    314 F.2d 886 (4th Cir. 1963) .....................................................................................................9

Patrick v. Local 51, Am. Postal Workers Union,
 2020 U.S. Dist. Lexis 23712 (S.D.N.Y. Feb. 11, 2020) ...........................................................24

Paulino v. N.Y. Printing Pressman's Union, Local Two,
 301 F. App'x 34 (2d Cir. 2008) ...............................................................................................16

Phelan v. Local 305 of United Ass'n of Journeymen,
 973 F.2d 1050 (2d Cir. 1992)......................................................................................................4

Piacente v. Int'l Union of Bricklayers & Allied Craftworkers,
 2015 U.S. Dist. Lexis 133642 (S.D.N.Y. Sept. 30, 2015) ..................................................14, 16

Rowan v. Laborers Int'l Union,
 2012 U.S. Dist. Lexis 110278 (E.D.N.Y. Aug. 3, 2012) ...................................................13, 15

Sampson v. Dist. Council of N.Y.C.,
 2012 U.S. Dist. Lexis 141822 (S.D.N.Y. Sept. 27, 2012) .......................................................14

Scerba v. Allied Pilots Ass'n,
 589 F. App'x 554 (2d Cir. 2014) ..............................................................................................18

Sim v. N.Y. Mailers' Union No. 6,
 166 F.3d 465 (2d Cir. 1999).......................................................................................................5

Smith v. Bowers,
 337 F. Supp. 2d 576 (S.D.N.Y. 2004).............................................................................6, 24, 25

Spellacy v. Airline Pilots Ass'n-Int'l,
 156 F.3d 120 (2d Cir. 1998)................................................................................................17, 19

Szymanski v. Local 3, IBEW,
 668 F. App'x 379 (2d Cir. 2016) ........................................................................................ 23-24

Trustees of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Shorecon-NY, Inc.,
 2020 U.S. Dist. Lexis 122884 (S.D.N.Y. July 13, 2020)...................................................16 n.6

United States v. District Council, et al.,
 90-Civ-5722 (S.D.N.Y.) (VM) ................................................................................................13

United States v. Int'l Bhd. of Teamsters,
 19 F.3d 816 (2d Cir. 1994)................................................................................................. 13-14

United States v. Int'l Bhd. of Teamsters,
 247 F.3d 370 (2d Cir. 2001)......................................................................................................12

United States v. Int'l Bhd. of Teamsters,
   315 F.3d 97 (2d Cir. 2002)................................................................................................13, 14

United States v. Int'l Bhd. of Teamsters,
   2007 U.S. Dist. Lexis 58792 (S.D.N.Y. Aug. 7, 2007) ...........................................................14

United States v. Int'l Bhd. of Teamsters,
   652 F. Supp. 2d 447 (S.D.N.Y. 2009).....................................................................................15

United States v. Int'l Bhd. of Teamsters,
   2014 U.S. Dist. Lexis 186808 (S.D.N.Y. Jan. 7, 2014)...........................................................14

United Paperworkers Int'l Union v. Specialty Paperboard, Inc.,
   999 F.2d 51 (2d Cir. 1993)........................................................................................................4

United Steelworkers of Am. v. Sadlowski,
   457 U.S. 102 (1982)..............................................................................................................6, 7

Vaca v. Sipes,
   386 U.S. 171 (1967)................................................................................................................22

Vaughn v. Air Line Pilots Ass'n, Int'l.,
   604 F.3d 703 (2d Cir. 2010)....................................................................................................21

Williams v. Metro-North R.R.,
   2020 U.S. Dist. Lexis 53914 (S.D.N.Y. Mar. 27, 2020)..........................................................23

Winter v. NRDC, Inc.,
   555 U.S. 7 (2008)...................................................................................................................24

Woods v. Dist. Council for N.Y.C. & Vicinity of the United Bhd.
of Carpenters & Joiners of Am.,
   2015 U.S. Dist. Lexis 77715 (S.D.N.Y. June 16, 2015)..............................................12, 16 n.7

White v. White Rose Food,
   237 F.3d 174 (2d Cir. 2001)....................................................................................................21

Yager v. Carey,
   910 F. Supp. 704 (D.D.C. 1995),
   aff'd, 1998 U.S. App. Lexis 1984 (D.C. Cir. Jan. 21, 1998) ...................................................14

## Statutes

Federal Rules of Civil Procedure,
    Rule 12(b)(6)........................................................................................................1
    Rule 65 ...............................................................................................................24

Labor Management Relations Act,
    Section 301, 29 U.S.C. § 185.............................................................. 2 & n.1, 17, 21
    Section 302(c)(6), 29 U.S.C. § 186(c)(6)..........................................................16 n.6
    Section 303, 29 U.S.C. § 187............................................................................2 n.1

Labor-Management Reporting and Disclosure Act,
    Section 101(a)(2), 29 U.S.C. § 411(a)(2).......................................................1, 6, 7, 8
    Section 101(a)(4), 29 U.S.C. § 411(a)(4)..........................................................16, 17
    Section 101(a)(5), 29 U.S.C. § 411(a)(5)...............................................1, 10, 11, 12, 13, 15
    Section 101(b), 29 U.S.C. § 411(b) ....................................................................3 n.2
    Section 102, 29 U.S.C. § 412.............................................................................1, 7
    Section 609, 29 U.S.C. § 529.........................................................................1, 6, 7
    Title I, 29 U.S.C. §§ 411-415...............................................................................7

National Labor Relations Act,
    Section 9(a), 29 U.S.C. § 159(a)........................................................................21
    Section 10(b), 29 U.S.C. § 160(b) .......................................................................4

## Other Authorities

Summers, "Legal Limitations on Union Discipline," 64 HARVARD L. REV. 1049 (1951)..............8

Defendants New York City District Council of Carpenters and Joiners of America (the "District Council") and its Executive Secretary-Treasurer ("EST") Joseph Geiger (collectively, the "District Council Defendants") submit this memorandum of law in support of their motion to dismiss the Amended Complaint ("Am. Compl.") of Plaintiff Jeffrey Souza Nunes ("Plaintiff") under Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff, a third-year carpenter apprentice and member of the District Council and the United Brotherhood of Carpenters and Joiners of America ("UBC") (collectively, the "Unions"), brings claims under the Labor-Management Reporting and Disclosure Act ("LMRDA") and the Labor Management Relations Act ("LMRA") against the Unions and a number of construction industry contractor-employers (the "Contractor Defendants").

Buried in Plaintiff's prolix and vexatious pleading is a simple story.  Plaintiff was dissatisfied with the terms of the collective bargaining agreement ("CBA") negotiated between the District Council and the Association of Wall-Ceiling & Carpentry Industries of New York, Incorporated.  He attempted in July 2019 to organize an unauthorized wildcat strike opposing the CBA.  And his conduct resulted in discipline by the District Council.

Plaintiff now asks the Court to save him from the consequences of his actions by micromanaging union labor relations and disciplinary procedures in contravention of settled law counseling against intrusion into union self-governance.

Plaintiff's First Claim for Relief under the LMRDA, 29 U.S.C. §§ 411(a)(2), 411(a)(5), 412, and 529, fails because his allegations are conclusory and ignore well-settled precedent. Moreover, he acknowledges that he engaged in the unprotected conduct for which he was charged and tried.  And he does not allege exhaustion of internal union disciplinary procedures.

1

The Second Claim for Relief, a duty of fair representation ("DFR") and hybrid LMRA § 301-DFR claim, brought under LMRA § 301, 29 U.S.C. § 185, falls far short of the demanding standards for pleading such claims, and is time-barred in whole or part.[1]  Plaintiff also failed to attempt to exhaust administrative remedies relating to this claim.  And his allegations of blacklisting and conspiracy in negotiating the CBA are wholly conclusory.  The Third Claim for Relief, which belatedly seeks a preliminary injunction under the LMRDA to enjoin the operation of the CBA, fails because the underlying claim is time-barred and non-meritorious, and because Plaintiff fails to meet the stringent standards for a preliminary injunction.

Plaintiff's Amended Complaint, which relies upon "labels and conclusions" rather than well-pled allegations of fact, cannot survive a motion to dismiss.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff has already amended his complaint.  Accordingly, the Amended Complaint should be dismissed in its entirety with prejudice as against the District Council Defendants.

## ALLEGATIONS OF THE AMENDED COMPLAINT

Plaintiff alleges that once the terms of the negotiated CBA were "leaked . . . membership anger grew exponentially."  (Am. Compl. ¶ 23.)  He alleges that at a rally on the day that the District Council's Delegate Body was to vote on ratification of the CBA, Plaintiff "conferred with several influential journeymen carpenters, who gave their verbal support on the condition that he agreed to be the front man."  (Id. ¶ 48.)  Plaintiff alleges that he "twice explained the strike motion to insure carpenters clearly understood it.  He explained the strike would begin the following day.  Carpenters yelled, 'yes' and 'immediately.'  Plaintiff asked again if there were

---

[1] Plaintiff alleges that this action arises under "section 301 of the . . . (LMRA), 29 U.S.C. 185 & 187."  (Am. Compl. ¶ 19.)  But no claims are asserted under 29 U.S.C. § 187, LMRA § 303, which pertains to secondary boycotts.

any 'no,' votes but no carpenter spoke up.  Carpenters then began chanting 'Strike! Strike! Strike!' repeatedly."  (Id. ¶ 50.)

Plaintiff alleges that at the Delegate Body meeting, the proposed CBA was put up "for a mere voice disapproval vote" (id. ¶ 26) and "[n]o delegate voiced disapproval" (id. ¶ 27).  He alleges that the District Council issued "robocalls and a posting on its website threatening carpenters with job termination and expulsion from the union if they engaged in a work stoppage."  (Id. ¶ 30.)  And he alleges that the wildcat "strike organization effort fizzled."  (Id. ¶ 31.)  Plaintiff alleges without further explanation that EST "Geiger singled out plaintiff for retribution because he was the most vulnerable of the apprentices, having no 'connections,' who might otherwise back him."  (Id. ¶ 32.)  Plaintiff contends that "Geiger and his [unidentified] cronies then enlisted defendant employers to blacklist plaintiff from employment."  (Id. ¶ 34.)  He further alleges that at a "sham trial" he was found "guilty of violating the UBC Constitution," and it was recommended that he "be expelled from [the] union."  (Id. ¶ 36.)

## ARGUMENT

### POINT I
### PLAINTIFF'S LMRDA CLAIM SHOULD BE DISMISSED.

Plaintiff's First Claim for Relief, brought under the LMRDA, presents unavailing, scattershot objections concerning the ratification of the CBA (see Am. Compl. ¶ 176); Plaintiff's punishment for attempting to organize a wildcat strike in opposition to the CBA (id. ¶ 182); and Plaintiff's internal union disciplinary trial (id. ¶ 185).[2]  All fail as a matter of law.

---

[2] The Amended Complaint includes an assertion that "[u]nder 29 U.S.C. 411(b), any bylaw that is inconsistent with section 411(a) rights shall be of no force or effect."  (Am. Compl. ¶ 184.)  However, Plaintiff does not identify any union bylaw that he claims is "inconsistent with section 411(a) rights."

A.      Plaintiff's LMRDA claim regarding CBA ratification is time-barred.

As a threshold matter, Plaintiff's new claim—that the District Council's Delegate Body improperly ratified the CBA by voice approval vote rather than roll-call vote in alleged violation of the LMRDA (see, e.g., Am. Compl. ¶ 176)—is time-barred.

Plaintiff does not identify the provision of the LMRDA that he claims was violated when the CBA was ratified by voice approval vote.  (See, e.g., id. & ¶ 178.)  Nevertheless, an LMRDA claim challenging "the alleged improper ratification" of a CBA—like Plaintiff's claim here—is subject to a six-month statute of limitations.  Legutko v. Local 816, Int'l Bhd. of Teamsters, 853 F.2d 1046, 1047, 1053 (2d Cir. 1988); Connor v. Elmhurst Dairy, Inc., 2015 U.S. Dist. Lexis 120497, at *15, *18 (E.D.N.Y. July 31, 2015) ("the statute of limitations for LMRDA claims that 'arise out of the labor-management relationship,' are subject to a six-month statute of limitations," and dismissing untimely challenge to validity of CBA and ratification procedure) (quoting Legutko, 853 F.2d at 1053, 1055); see also United Paperworkers Int'l Union v. Specialty Paperboard, Inc., 999 F.2d 51, 54 (2d Cir. 1993) ("'we . . . have borrowed the [6-month] Section 10(b) [29 U.S.C. § 160(b)] limitations period where claims have directly implicated the collective bargaining relationship'") (citation omitted); cf. Phelan v. Local 305 of United Ass'n of Journeymen, 973 F.2d 1050, 1061 (2d Cir. 1992) (finding six-month statute of limitations under 29 U.S.C. § 160(b) did not apply where case did "not involve the formation or ratification of a collective bargaining agreement as was the case in Legutko").

Here, Plaintiff did not challenge the formation and ratification of the CBA within six months of its July 10, 2019 ratification.  (See Am. Compl. ¶¶ 46-47, 67.)  Plaintiff's first challenge to the CBA ratification came in his Amended Complaint filed on May 5, 2020, which was nearly 10 months after CBA negotiations were completed and the CBA had been ratified by

the Delegate Body.  Nor could his claim be salvaged by a relation-back argument.  Plaintiff's

original Complaint—filed on February 7, 2020 (ECF Dkt. No. 1)—was also filed more than six

months after the CBA was ratified on July 10, 2019 (see Am. Compl. ¶¶ 46-47, 67).  Plaintiff's

LMRDA challenge to the ratification of the CBA is time-barred and should be dismissed with

prejudice.

B.      Plaintiff's LMRDA claim regarding CBA ratification fails on the merits.

In addition to being time-barred, Plaintiff's challenge to the ratification of the CBA fails

on the merits.  Again, Plaintiff fails to identify any LMRDA provision that was allegedly

violated when the Delegates ratified the CBA by voice approval vote.

Plaintiff lists District Council Bylaws provisions relating to Delegate rules and voting.

(See, e.g., id. ¶¶ 59-61.)  But he does not (and cannot) point to any governing document or

authority requiring that a CBA ratification vote proceed by roll call as opposed to voice vote.

Instead, Plaintiff, who does not (and cannot) allege that he is or ever was a Delegate, alleges that

the Bylaws provide that the Delegates make the rules on their ratification procedures.  (Id. ¶ 61.)

And he concedes that no Delegates—i.e., those who make the rules for ratification—expressed

disapproval of either the CBA itself or the voice vote.  (See id. ¶¶ 27, 67.)[3]

Plaintiff thus asks the Court to assist him in stepping into the shoes of the Delegates and

altering the manner by which the Delegates determined to ratify the CBA, contravening well-

established law giving deference to unions' interpretations of their constitutions and bylaws and

counseling against judicial interference in internal union affairs.  See Sim v. N.Y. Mailers' Union

No. 6, 166 F.3d 465, 470 (2d Cir. 1999); Gurton v. Arons, 339 F.2d 371, 375 (2d Cir. 1964).  As

---

[3] Plaintiff's unsupported conjecture that "[n]o delegate voiced disapproval as a substantial number had expected to vote against the proposed CBA during the roll call vote" (Am. Compl. ¶ 27) makes no logical sense and does not undermine his concession that, when presented with a voice vote, the Delegates themselves, who are responsible for voting procedures, did not disapprove of either the CBA itself or the method of the ratification vote.

the Amended Complaint alleges, the Delegates already spoke on ratification of the CBA and ratified it by voice vote.  See Smith v. Bowers, 337 F. Supp. 2d 576, 590 (S.D.N.Y. 2004) ("Even if the Court might have reached a different conclusion regarding the proper means of operating the Union's election procedures . . . 'a court should defer to a union official's reasonable interpretation of his union's constitution even if the court might not have reached the same interpretation.'") (citations omitted).

In addition, Plaintiff fails to set forth facts demonstrating prejudice from the manner by which the CBA was ratified.  He alleges the CBA was ratified at a Delegate Body meeting without any disapproval.  (Am. Compl.¶ 67.)  His characterization of the ratification vote as "sneaky" and "treacherous" (id. ¶¶ 26, 65, 176) is absurd and unsupported by alleged facts.  And his apparent hope that a roll-call vote would yield a different result rests on pure speculation.

Plaintiff also complains that the Court-appointed Independent Monitor, who Plaintiff states has "authority to investigate allegations of corruption or wrongdoing by" District Council representatives (id. ¶ 155), "showed no apparent interest in following up" on complaints about the CBA vote (id. ¶ 201; see also id. ¶ 157).  Thus, while the source of Plaintiff's allegation that roll-call ratification votes are "mandatory" (id. ¶ 20) is unclear, it is clear from the Amended Complaint that neither the Delegate Body charged with making the rules on voting procedures nor the Court-appointed Independent Monitor agrees with his unsupported assertion.  His claim challenging the ratification vote is meritless and should be dismissed.

C.    Plaintiff's claims under LMRDA §§ 101(a)(2) and 609 should be dismissed because advocating a wildcat strike is not protected activity.

Plaintiff's First Claim for Relief invokes LMRDA § 101(a)(2) (Am. Compl. ¶ 177), the statute's "'freedom of speech and assembly' provision," United Steelworkers of Am. v. Sadlowski, 457 U.S. 102, 107 (1982).  Section 101(a)(2) states in pertinent part:

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; . . . <u>Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.</u>

29 U.S.C. § 411(a)(2) (emphasis added).  LMRDA § 609, 29 U.S.C. § 529, cited by Plaintiff (Am. Compl. ¶ 179), "also prohibits unions from disciplining members for exercising the rights enumerated in Section 101," <u>Corley v. Farrell</u>, 2016 U.S. Dist. Lexis 93813, at *8 (E.D.N.Y. July 18, 2016).  And LMRDA § 102, 29 U.S.C. § 412, provides that an action may be brought in district court for violations of Title I of the LMRDA, 29 U.S.C. §§ 411-415.

Recognizing that "'great care should be taken not to undermine union self-government or weaken unions in their role as collective-bargaining agents' . . . Congress added a proviso to the guarantee of freedom of speech and assembly disclaiming any intent 'to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution . . . .'" <u>NLRB v. Allis-Chalmers Mfg. Co.</u>, 388 U.S. 175, 194 (1967) (citations omitted).  The proviso to Section 101(a)(2) protects union rules that are "rationally related to a legitimate and protected purpose," even if they would otherwise "interfere with rights" protected under Section 101(a)(2).  <u>Sadlowski</u>, 457 U.S. at 121.  Thus, the speech protection under "§ 101(a)(2) is not absolute." <u>Bernstein v. Nolan</u>, 1990 U.S. Dist. Lexis 7816, at *22 (S.D.N.Y. June 26, 1990) (internal citations omitted).  Indeed, a "union may discipline its members for offenses not proscribed by written rules at all." <u>Int'l Bhd. of Boilermakers v. Hardeman</u>, 401 U.S. 233, 244 (1971).

Here, Plaintiff's argument that he was "retaliate[ed]" against by being punished for attempting to organize a wildcat strike (<u>see, e.g.</u>, Am. Compl. ¶ 86) amounts to an argument that he should not have been disciplined for his admitted misconduct.  It is well-settled, however, that

"[i]ntegral to . . . federal labor policy has been the power in the chosen union to protect against erosion its status under that policy through reasonable discipline of members who violate rules and regulations governing membership.  That power is particularly vital when the members engage in strikes."  Allis-Chalmers, 388 U.S. at 181.

The District Council's discipline of Plaintiff for attempting to organize an unauthorized strike fell squarely within the proviso to LMRDA § 101(a)(2).  Unions may expel members who "attempt[] to threaten the union as an institution."  Mayle v. Laborer's Int'l Union, Local 1015, 866 F.2d 144, 146 (6th Cir. 1988).  And unions may restrict speech that interferes with the union's "legal or contractual obligations."  29 U.S.C. § 411(a)(2).  An unauthorized wildcat strike by definition interferes with a union's institutional integrity and contractual obligations.  See, e.g., Maxwell v. United Auto, 489 F. Supp. 745, 752 (C.D. Ill. 1980) ("[i]nterference with the union's contractual obligations would have existed if plaintiffs had . . . support[ed] . . . wildcat strikes"); cf. Emporium Capwell Co. v. Western Addition Cmty. Org., 420 U.S. 50, 63-64, 69-70 (1975) (union members who engaged in wildcat picketing and boycotting of employer lost their protections under the National Labor Relations Act because they attempted to substitute themselves for the union).  Similarly, "the power to fine or expel strike-breakers is essential if the union is to be an effective bargaining agent."  Allis-Chalmers, 388 U.S. at 181.  The LMRDA simply does not protect organizing, promoting, or encouraging an unauthorized wildcat strike.

Indeed, over a decade after the LMRDA was passed, a court stated: "'[i]t is so obvious that a union may punish its members for engaging in an unauthorized strike that the courts have never bothered to discuss the matter. . . . Disciplining wildcat strikers may not only be a power but a positive duty of the union.'"  Jolly v. Gorman, 428 F.2d 960, 965 (5th Cir. 1970) (quoting Summers, "Legal Limitations on Union Discipline," 64 HARVARD L. REV. 1049, 1065 (1951));

8

see also Parks v. Int'l Bhd. of Elec. Workers, 314 F.2d 886, 905 (4th Cir. 1963) ("severe disciplinary measures, including expulsion of individual members [is justified] . . . when an unauthorized strike has been undertaken"); cf. Hansen v. Guyette, 814 F.2d 547, 552 (8th Cir. 1987) (under the LMRDA, international union could impose a trusteeship on an affiliated local union for engaging in unauthorized strike).[4]

1.   Plaintiff indisputably engaged in the conduct for which he was disciplined.

Plaintiff alleges that EST Geiger "sought to throttle plaintiff's free speech rights" by having the Inspector General "concoct charges against him for allegedly violating the UBC Constitution."  (Am. Compl. ¶ 33.)  Plaintiff's allegation of "concoct[ed] charges" is belied by his own allegations in which he admits to the very conduct for which he was charged.

Thus, Plaintiff alleges that he "agreed to be the front man" for the wildcat strike.  (Id. ¶ 48 (emphasis added).)  And he alleges that at a rally in opposition to the CBA, he led the strike motion, "twice explain[ing] the strike motion to insure carpenters clearly understood it."  (Id. ¶ 50.)  According to Plaintiff, "[h]e explained the strike would begin the following day."  (Id.) (emphasis added).  Furthermore, in his initial Complaint, Plaintiff admitted to "attempting to organize a strike opposing the CBA."  (See ECF Dkt. No. 1 at ¶ 18 (emphasis added).)  And he alleged that "plaintiff made a voice motion calling for a strike."  (Id. ¶ 33 (emphasis added).) Plaintiff's own allegations thus demonstrate that he attempted to organize an unauthorized strike, was the "front man" for the strike effort, made the motion to undertake a wildcat strike, and explained the strike logistics to other carpenters.  (See Am. Compl. ¶¶ 48, 50; see also ECF Dkt.

---

[4] Plaintiff fails to offer a single allegation of fact to support his conclusion that "[t]he charges against plaintiff were intended to, and succeeded, in intimidating other carpenters . . . from continuing to protest the CBA." (Am. Compl. ¶ 94.)  Moreover, Plaintiff was not charged with protesting the CBA.  Rather, he was charged with attempting to organize, promote, and encourage an unauthorized wildcat strike.  (Id. ¶ 89.)

No. 1 at ¶¶ 18, 33.)  Plaintiff's conclusion that he was "singled out" (see, e.g., Am. Compl. ¶¶ 32, 182) is undermined by his own allegations.

    2.  <u>Plaintiff's attempts to justify his conduct are unavailing.</u>

Plaintiff attempts to justify his conduct by alleging that (1) "[t]here was no UBC Constitution or D[istrict] C[council] Bylaw or rule that prevented the specific dissenting conduct of plaintiff or other carpenters," and (2) "[t]he CBA was illegally ratified, and therefore, not legally binding."  (See Am. Compl. ¶ 178.)  Plaintiff is incorrect.  But even if true, these conclusions fail to support his LMRDA claim.

First, contrary to Plaintiff's suggestion, neither the UBC's Constitution nor the District Council's Bylaws were required to enumerate every specific act falling within the categories of offenses in the UBC Constitution for which Plaintiff was charged and tried: "Causing dissension" and "violating the Obligation."  (See id. ¶ 87.)  See Hardeman, 401 U.S. at 244-45.

Moreover, the LMRDA "gives courts no warrant to scrutinize the union regulations in order to determine whether particular conduct may be punished at all."  Id. at 245.  In examining the legislative history of the LMRDA, the Supreme Court noted:

> We think that this is sufficient to indicate that [LMRDA] § 101(a)(5) was <u>not intended to authorize courts to determine the scope of offenses for which a union may discipline its members</u>.  And if a union <u>may discipline its members for offenses not proscribed by written rules</u> at all, it is surely a futile exercise for a court to construe the written rules in order to determine whether particular conduct falls within or without their scope.

Id. at 244-45 (emphases added).[5]  Notably, in Hardeman the Supreme Court upheld the expulsion of a union member who had been charged with "creat[ing] dissension" when he

---

[5]The Supreme Court cited the testimony of Senator Goldwater in the legislative history: "'The [LMRDA] bill of rights . . . does not require that [union] charges, to be valid, must be based on activity that the union had proscribed prior to the union member having engaged in such activity.'"  Hardeman, 401 U.S. at 244 (citation omitted).

assaulted a union representative.  <u>Id.</u> at 241, 247.  Here, Plaintiff was charged with the nearly

identical offense of "[c]ausing dissension."  (<u>See</u> Am. Compl. ¶ 87.)

Second, Plaintiff's allegation that the "CBA was illegally ratified" (<u>id.</u> ¶ 178) is an

unsupported non sequitur.  There is no support for Plaintiff's suggestion that the LMRDA

protected his attempt to organize a wildcat strike because the CBA was ratified by a voice vote

which he deems "illegal."  Moreover, according to Plaintiff, he sought to organize a wildcat

strike in opposition to the <u>terms of the negotiated CBA</u>, not in opposition to the voting

procedures by which the CBA was ratified.  (<u>See id.</u> ¶¶ 47-48, 50.)  His claim about the

ratification procedure is an after-the-fact attempt to justify his actions.  Thus, Plaintiff alleges

that when the <u>terms</u> of the CBA were revealed in advance of the ratification vote, the "need for

<u>drastic action to stop it from being ratified</u> dominated discussion."  (<u>See id.</u> ¶ 47 (emphasis

added).)  And, according to Plaintiff, he agreed to act as the "front man" for the wildcat strike

effort prior to the ratification vote.  (<u>See id.</u> ¶ 48.)  By <u>his</u> account, Plaintiff's actions were not

motivated by the method of the ratification vote that, anyway, does not state an LMRDA claim.

D.     Plaintiff's claim under LMRDA § 101(a)(5) should be dismissed because he fails to plead
       <u>facts that he did not receive a full and fair hearing on his admitted misconduct.</u>

Plaintiff also cites LMRDA § 101(a)(5), 29 U.S.C. § 411(a)(5).  (Am. Compl. ¶ 183.)

That Section provides in relevant part:

> No member of any labor organization may be fined, suspended, expelled, or
> otherwise disciplined . . . unless such member has been (A) served with written
> specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a
> full and fair hearing.

29 U.S.C. § 411(a)(5).

While Plaintiff fails to specify the subsection of Section 101(a)(5) under which he intends

to bring a claim (<u>see</u> Am. Compl. ¶ 183), it is assumed for purposes of this motion that Plaintiff

claims that he was not "afforded a full and fair hearing" under Section 101(a)(5)(C), insofar as he claims that his "Trial was a Procedural and Substantive Sham" (id. at 16, heading C).  But Section 101(a)(5) provides "only procedural requirements."  Allis-Chalmers, 388 U.S. at 194 (emphasis added).  Plaintiff's (1) attacks on the Trial Committee ("TC") and its Procedures (see, e.g., Am. Compl. ¶¶ 111-17, 120-21) and (2) complaints about the admission of certain testimonial and documentary evidence at his internal union trial (see, e.g., id. ¶¶ 122-43) fail to state a claim for violation of Section 101(a)(5)(C) or any other statute.

Plaintiff ignores the fundamental, well-settled precept that "courts faced with challenges arising under Section 101(a)(5) recognize that union disciplinary proceedings are not judicial proceedings, and therefore, the full panoply of procedural safeguards found in such proceedings are not required."  Georgopoulos v. Int'l Bhd. of Teamsters, 942 F. Supp. 883, 895 (S.D.N.Y. 1996) (emphasis added), aff'd, 116 F.3d 1472 (2d Cir. 1997).  Thus, "[n]ot all of the due process protections available in the federal courts apply to union disciplinary proceedings."  United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 385 (2d Cir. 2001); Woods v. Dist. Council for N.Y.C. & Vicinity of the United Bhd. of Carpenters & Joiners of Am., 2015 U.S. Dist. Lexis 77715, at *6 (S.D.N.Y. June 16, 2015) (granting motion to dismiss).

1.   Plaintiff's attacks on the District Council's Trial Procedures are misguided.

Plaintiff complains that the District Council violated his rights under the UBC Constitution by applying the District Council's own Trial Procedures in adjudicating the wildcat strike charges against him.  (See Am. Compl. ¶¶ 111-17.)  He sums up his complaint by asserting that "the Trial Procedures illegally and arrogantly declare, in the event of a conflict with [UBC Constitution Section] 52(J)(5), 'these rules shall prevail.'"  (Id. ¶ 111.)

12

Plaintiff correctly notes that the District Council's Trial Procedures prevail if there is a conflict with the UBC Constitution.  But he is wrong that this is "illegal."  That is because, as Plaintiff alleges (id. ¶¶ 56-57), the affairs of the District Council have been overseen since 1994 under a civil RICO Consent Decree in United States v. District Council, et al., 90-Civ-5722 (S.D.N.Y.) (VM) ("U.S. v. District Council").  Under the Consent Decree, the District Council's current Trial Procedures were recommended by the then-Court appointed Review Officer (the "RO") and adopted by the District Council's Delegate Body on August 28, 2013.  See U.S. v. District Council, Seventh Interim Report of the Review Officer, entered Dec. 3, 2013, ECF Dkt. No. 1440-1, at 33, & Exh. 15 (Trial Procedures), Dkt. No. 1440-16.  Indeed, when the District Council's Delegate Body at its meeting in September 2013 attempted to rescind the new rules, the RO specifically vetoed that action, leaving the current Trial Procedures in place.  See id., Exh. 16 (RO Dennis Walsh email of Sept. 13, 2013), Dkt. No. 1440-17.  The RO's Report is a matter of public record that may properly be considered on this motion.  See Rowan v. Laborers Int'l Union, 2012 U.S. Dist. Lexis 110278, at *14 (E.D.N.Y. Aug. 3, 2012).

> 2.  The affidavit of Anthony Madaio was properly admitted at Plaintiff's union trial.

Plaintiff complains about the admission of the Affidavit of Anthony Madaio ("Madaio Affidavit') at his union trial, while at the same time acknowledging that the District Council's Trial Procedures specifically permit the admission of affidavits.  (See Am. Compl. ¶ 141.)  Plaintiff provides absolutely no information regarding the content of the Madaio Affidavit.  And he fails to allege that he was prejudiced in any way by its admission at his trial.

Moreover, Second Circuit law provides that hearsay—including testimony by sworn statement—is admissible in union disciplinary hearings under LMRDA § 101(a)(5).  United States v. Int'l Bhd. of Teamsters, 315 F.3d 97, 100 n.3 (2d Cir. 2002); United States v. Int'l Bhd.

of Teamsters, 19 F.3d 816, 823 (2d Cir. 1994); United States v. Int'l Bhd. of Teamsters, 2014

U.S. Dist. Lexis 186808, at *15 (S.D.N.Y. Jan. 7, 2014).  Thus, affidavits are permitted at

District Council internal trials under both the Trial Procedures and Second Circuit law.

 Plaintiff's conclusory allegation that the Trial Chairman "abused his discretion by

allowing the TC to give the Madaio Affidavit whatever weight it wished" in alleged

contravention of the Trial Procedures (see Am. Compl. ¶ 141), is unavailing.  "[E]ven where a

union fails to abide by its own procedural rules, there is no LMRDA violation unless the failure

also 'contravenes specific prohibitions in the LMRDA.'"  Piacente v. Int'l Union of Bricklayers

& Allied Craftworkers, 2015 U.S. Dist. Lexis 133642, at *30 (S.D.N.Y. Sept. 30, 2015)

(citations omitted); see also Sampson v. Dist. Council of N.Y.C., 2012 U.S. Dist. Lexis 141822,

at *17 (S.D.N.Y. Sept. 27, 2012) (same) (granting motion to dismiss).  There is no such specific

prohibition in the LMRDA.  See United States v. Int'l Bhd. of Teamsters, 315 F.3d at 100 n.3.

 3.  Plaintiff fails adequately to allege Trial Committee bias.

 Next, Plaintiff claims that the District Council's TC, "with the exception of one member,

was selected from the Geiger tree of cronies."  (Am. Compl. ¶ 120.)  In purported support of this

allegation, Plaintiff merely lists members of the TC and alleges that they were a "crony" or "pal"

of a union officer or delegate.  (Id. at ¶ 121.)  To the extent that Plaintiff's conclusory allegations

are intended to allege bias on behalf of the TC (see id. ¶¶ 117, 120), his failure to make

"'specific factual allegations of bias'" defeats his claim, see United States v. Int'l Bhd. of

Teamsters, 2007 U.S. Dist. Lexis 58792, at *14 (S.D.N.Y. Aug. 7, 2007) (quoting Yager v.

Carey, 910 F. Supp. 704, 715 (D.D.C. 1995), aff'd, 1998 U.S. App. Lexis 1984 (D.C. Cir. Jan.

21, 1998)); see also Kent v. N.Y. State Pub. Employees Fed., 2020 U.S. Dist. Lexis 55211, at

*49-50 (N.D.N.Y. Mar. 31, 2020) (evidence that some union hearing panel members supported

defendant's administration "alone does not suffice to establish that they were biased against Plaintiffs"), appeal filed, May 1, 2020, No. 20-1454 (2d Cir.).

    4.  Plaintiff's allegations on trial evidence are misplaced.

Plaintiff inappropriately attempts to re-litigate his union trial in contravention of well-settled law counseling against judicial intervention in union disciplinary proceedings. See Hardeman, 401 U.S. at 242-43. Thus, Plaintiff complains that the Trial Chair "abused his discretion" by "allowing into evidence irrelevant or flawed documents" and testimony. (See Am. Compl. ¶ 123; see also id. ¶¶ 124-43.) These allegations fail to state a claim under Section 101(a)(5).

First, Section 101(a)(5) "'does not require that union disciplinary hearings incorporate the specific protections associated with judicial proceedings, including . . . the technical rules of pleading, procedure, and evidence.'" United States v. Int'l Bhd. of Teamsters, 652 F. Supp. 2d 447, 459 (S.D.N.Y. 2009) (quoting Frye v. United Steelworkers of Am., 767 F.2d 1216, 1224 (7th Cir. 1985)).

Second, under Section 101(a)(5), a charging party need only provide "some evidence" to support the charges. Hardeman, 401 U.S. at 246. "This is the proper standard of judicial review," as a "stricter standard . . . would be inconsistent with the apparent congressional intent to allow unions to govern their own affairs." Id. Plaintiff's assertions of 'abuse of discretion' (see Am. Compl. ¶¶ 123, 126, 141) rely on an inapplicable standard. Moreover, Plaintiff admits that he attempted to organize a wildcat strike, which is "more than 'some evidence.'" See Georgopoulos, 942 F. Supp. at 902; see also Rowan, 2012 U.S. Dist. Lexis 110278, at *23-26.

Third, Plaintiff's own allegations contradict his conclusions about trial evidence. For example, he counts among the allegedly "improperly admitted evidence" an "excerpt from the

One Vanderbilt Project Labor Agreement." (Am. Compl. p. 19, heading, & ¶ 124.) But he alleges that carpenters rallied in support of the wildcat strike at the One Vanderbilt jobsite. (See id. ¶ 79.) And he complains that a flyer admitted at trial was "lifted from plaintiff's Facebook page." (Id. ¶ 128 (emphasis added).) In any event, Plaintiff's conclusions about the merits of particular evidence are of no moment. See Piacente, 2015 U.S. Dist. Lexis 133642, at *46.[6]

E.     Plaintiff fails to allege exhaustion of internal union remedies.

In recognition of the federal policy against unnecessary judicial interference in union affairs, district courts may require exhaustion of internal union remedies before proceeding to court. See 29 U.S.C. § 411(a)(4); NLRB v. Indus. Union of Marine & Shipbuilding Workers of Am., Local 22, 391 U.S. 418, 429 (1968) (Harlan, J., concurring) ("courts and agencies will frustrate an important purpose of the 1959 legislation if they do not, in fact, regularly compel union members 'to exhaust reasonable hearing procedures' within the union") (citation omitted).

Plaintiff acknowledges that he has failed to exhaust his internal union remedies prior to bringing suit. (See Am. Compl. ¶¶ 162-63.)[7] His conclusory excuses for such failure (see id. ¶¶ 163, 169) are insufficient. See Jacque v. Wirt, 377 F. App'x 50, 52 (2d Cir. 2010) ("unsubstantiated and speculative allegations" do not excuse failure to exhaust); Paulino v. N.Y. Printing Pressman's Union, Local Two, 301 F. App'x 34, 38 (2d Cir. 2008) (same). The District Council Defendants respectfully request that the Court dismiss Plaintiff's LMRDA claims

---

[6] Plaintiff sets forth a number of allegations concerning apparent personal grievances and disputes he has with the Carpenter Training Center ("CTC") relating to scheduling apprentice training classes, his being kicked out of a class for violating the prohibition against smoking, and booking a flight to Las Vegas to attend a voluntary training program. (See Am. Compl. ¶¶ 144-53.) Plaintiff makes the most conclusory of insinuations of a conspiracy between the District Council and the CTC. (See, e.g., id. ¶ 35.) As discussed below in Point II.A.2 at pp. 18-21, conclusory allegations of a conspiracy are insufficient to state a claim. And Plaintiff's allegations fail to demonstrate how assertions against the CTC, an independent employee benefit trust fund, state a claim under any of his Claims for Relief. The CTC (a/k/a Apprenticeship, Journeyman Retraining, Educational and Industry Fund) is neither a party to this lawsuit nor a labor organization. Rather, it is a Taft-Hartley jointly employer-union trusteed employee benefit educational fund established under LMRA § 302(c)(6), 29 U.S.C. § 186(c)(6). See Trustees of the N.Y.C. Dist. Council of Carpenters Pension Fund v. Shorecon-NY, Inc., 2020 U.S. Dist. Lexis 122884, at *1-2 (S.D.N.Y. July 13, 2020).
[7] For the relevant portion of the UBC Constitution, see Woods, 2015 U.S. Dist. Lexis 77715, at *10 & n.5.

pursuant to 29 U.S.C. § 411(a)(4).  See Cloke v. Adams, 2010 U.S. Dist. Lexis 78758, at *9-10

(S.D. Ohio May 27, 2010) (recommending motion to dismiss be granted where member of a

carpenters district council failed to exhaust internal remedies before filing LMRDA suit), report

of magistrate adopted, 2010 U.S. Dist. Lexis 78774 (S.D. Ohio Aug. 4, 2010).[8]

## POINT II
### PLAINTIFF'S DFR AND HYBRID LMRA § 301-DFR CLAIMS FAIL.

In his Second Claim for Relief, Plaintiff alleges that the District Council (1) "conspired"

with unspecified "employers to represent their best interests rather than those of carpenters" in

negotiating and ratifying the CBA (Am. Compl. ¶ 190); and (2) "colluded" with the Defendant

employers "to blacklist plaintiff from jobs" (id. ¶ 191).

Plaintiff refers to the employers with whom the District Council allegedly "conspired" in

negotiations generically as "employers," without further identification.  (See id. ¶ 190.)  He does

not allege that any of the Contractor Defendants engaged in CBA negotiations.  (See id.)  It is

therefore assumed that the negotiation/ratification prong of his claim is asserted as a standalone

DFR claim and that the blacklisting prong is asserted as a hybrid LMRA § 301-DFR claim.  See

Carrion v. Enter. Ass'n, 227 F.3d 29, 33 (2d Cir. 2000).  In any event, Plaintiff fails to offer a

scintilla of alleged factual support for any of his theories of collusion and conspiracy.  His claims

fail as a matter of law under the "highly deferential" standard for review of union action.  See

Spellacy v. Airline Pilots Ass'n-Int'l, 156 F.3d 120, 126 (2d Cir. 1998).

A.    Plaintiff's new DFR claim regarding negotiations fails as a matter of law.

Plaintiff's new claim that "[a]s to the CBA negotiation and ratification, UBC and

D[istrict] C[council] conspired with employers to represent their best interests rather than those

of carpenters" (Am. Compl. ¶ 190), is time-barred and fails on the merits.

---

[8] To the extent that Plaintiff intends his claims of alleged collusion to blacklist him to apply to his LMRDA claim (see, e.g., Am. Compl. ¶¶ 95-105), such allegations fail, as discussed below at Point II.B. on pp.21-23.

1.  Plaintiff's claim regarding CBA negotiations/ratification is time-barred.

As a threshold matter, Plaintiff's challenge to the negotiation and ratification of the CBA is time-barred because he failed to bring his claim within six months of such negotiation and ratification.  See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 169 (1983).  The six-month statute of limitations applicable to a DFR claim "'accrues no later than the time when plaintiffs knew or reasonably should have known that such a breach of the duty of fair representation had occurred.'"  Scerba v. Allied Pilots Ass'n, 589 F. App'x 554, 556, 557-58 (2d Cir. 2014) (affirming dismissal of DFR claim as time-barred and finding claim accrued as of the date that CBA terms were agreed upon, even though CBA still required ratification) (quoting Cohen v. Flushing Hosp., 68 F.3d 64, 67 (2d Cir. 1995)).

Here, Plaintiff's allegations concerning negotiation and ratification of the CBA accrued no later than July 10, 2019.  He alleges that the terms of the CBA were "leaked" on July 3, 2019, seven days prior to the Delegates' CBA ratification vote on July 10, 2019.  (See Am. Compl. ¶¶ 23, 46-47.)  And he rallied in opposition to the CBA's terms on July 10, 2019.  (Id. ¶¶ 47-48.)  He also challenges the ratification procedures by which the CBA was ratified on that same date. (See id. ¶ 20.)  Yet, as discussed above in Point I.A at pp. 4-5, Plaintiff did not assert his DFR claim within six months of the CBA's negotiation and ratification, making it time-barred.

2.  Plaintiff fails to state a claim for violation of the DFR in negotiating the CBA.

Plaintiff's DFR claim regarding CBA negotiations also fails on the merits.  "Because federal policy gives unions wide latitude to act in their representative capacity, a plaintiff's obligation to plead sufficient conduct to state a claim for breach of the DFR imposes 'an enormous burden.'"  Dillard v. SEUI Local 32BJ, 2015 U.S. Dist. Lexis 152502, at *10 (S.D.N.Y. Nov. 6, 2015) (citation omitted).

18

Plaintiff fails to set forth concrete facts to support a claim that the District Council's conduct in negotiating and ratifying the CBA was "arbitrary, discriminatory, or in bad faith." See Air Line Pilots Ass'n Int'l v. O'Neill, 499 U.S. 65, 67 (1991).  He also fails adequately to allege facts that "demonstrate a causal connection" between alleged wrongful conduct by the union and his alleged injuries, as he must to state a DFR claim.  See Spellacy, 156 F.3d at 126.

Thus, the Amended Complaint is devoid of any allegations of fact to support the assertion that the Unions "conspired with [unidentified] employers" in the negotiation and ratification of the CBA.  (See Am. Compl. ¶ 190.)  Plaintiff recites a number of CBA terms that he claims are unfavorable to some carpenters.  (See, e.g., id. ¶¶ 70-78.)  But allegations "that the union had not negotiated the best agreement for its workers . . . [are] insufficient" to state a claim for breach of the DFR.  Marquez v. Screen Actors Guild, 525 U.S. 33, 46 (1998).

Indeed, a union's actions are arbitrary so as to constitute a breach of the DFR "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational."  O'Neill, 499 U.S. at 67 (citation omitted).  "This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong."  Marquez, 525 U.S. at 45-46.  Plaintiff fails to allege any facts that could demonstrate that the CBA's terms are irrational.  See id. at 46.

Insofar as Plaintiff attempts to allege bad faith by claiming that the Unions "conspired" with unidentified employers in negotiating the CBA (see Am. Compl. ¶ 190), he fails to state a claim.  "Conclusory allegations of 'participation' in a 'conspiracy' have long been held insufficient to state a claim."  Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 182 (2d Cir. 2012).  Thus, "[w]here a plaintiff fails 'to allege familiar aspects of a conspiracy, such as

who was involved, and when and where these individuals met and conspired,' the plaintiff fails

to clear the Twombly threshold for surviving a motion to dismiss." Johnson v. NFL Players

Ass'n, 2018 U.S. Dist. Lexis 225346, at *40 (S.D.N.Y. Oct. 3, 2018) (citation omitted), appeal

filed, Aug. 29, 2019, No. 19-2734 (2d Cir.).

Here, Plaintiff fails to allege who from each of the Unions and who from the unidentified

employers allegedly "met and conspired" or when and where they allegedly met and conspired,

let alone the details of such alleged conspiracy.  See id.  Nor does he explain why the Unions

would "conspire[]" to "represent the[] best interests" of employers "rather than those of

carpenters."  (See Am. Compl. ¶ 190.)  See Bejjani v. Manhattan Sheraton Corp., 2013 U.S. Dist.

Lexis 90467, at *42-43, *45 (S.D.N.Y. June 27, 2013) (dismissing complaint, which "allege[d]

no facts that explain why" parties would engage in conspiracy), aff'd, 567 F. App'x 60 (2d Cir.

2014).

Unsupported assertions of a conspiracy, such as those advanced by Plaintiff here, "are the

'sort of conclusory allegations or legal conclusions masquerading as factual conclusions [that]

will not suffice to prevent a motion to dismiss.'"  See Bey v. Welsbach Elec. Corp., 38 F. App'x

690, 693 (2d Cir. 2002) (citation omitted); see also Bejjani, 567 F. App'x at 64 (affirming

dismissal of hybrid § 301/DFR claim of alleged "collusive Union and [employer] retaliation").

Moreover, to the extent that Plaintiff alleges that the CBA's terms were "particularly"

unfavorable to apprentice carpenters (see Am. Compl. ¶ 21; see also id. ¶ 70), he does not state a

claim for breach of the DFR.  The Supreme Court has long noted that "[i]nevitably differences

arise in the manner and degree to which the terms of any negotiated agreement affect individual

employees and classes of employees.  The mere existence of such differences does not make

them invalid.  The complete satisfaction of all who are represented is hardly to be expected."

Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953) (emphasis added); see also Vaughn v. Air Line Pilots Ass'n, Int'l, 604 F.3d 703, 712 (2d Cir. 2010) ("there is no requirement that unions treat their members identically").

B.       Plaintiff's claim that the unions and employers colluded to blacklist him fails.

The second principal claim of Plaintiff's Second Claim for Relief is that "Defendant unions and employers colluded to blacklist plaintiff from jobs." (Am. Compl. ¶ 191.) Plaintiff alleges that the Unions "breached their duty of fair representation to plaintiff" (id. ¶ 192) and the "Defendant employers breached collective bargaining agreements" (id. ¶ 193). "Such a suit, which alleges that the employer breached the CBA and that the union breached its duty of fair representation, is known as a hybrid § 301/fair representation claim." Carrion, 227 F.3d at 33. "Section 301 of the LMRA governs the employer's duty to honor the collective bargaining agreement, and the [DFR] is implied from § 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a)." White v. White Rose Food, 237 F.3d 174, 179 n.3 (2d Cir. 2001).

"To establish a hybrid § 301/DFR claim, a plaintiff must prove both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-à-vis the union members." White, 237 F.3d at 178 (emphasis added). Plaintiff's allegations fail to meet this "demanding standard." See Cover v. Am. Postal Workers Union, 357 F. App'x 336, 338 (2d Cir. 2009).

Other than the conclusory allegation that "Defendant employers breached collective bargaining agreements" (Am. Compl. ¶ 193), Plaintiff makes no attempt to satisfy the first prong of his hybrid § 301-DFR claim. He fails to identify which collective bargaining agreements were allegedly breached by which of the various Defendant employers, let alone the particular

contractual provisions each allegedly violated.  Plaintiff thus fails to state a plausible hybrid §

301-DFR claim.  See Bejjani, 567 F. App'x at 62.

Nor does Plaintiff adequately plead that the District Council violated its DFR by conduct

that was "arbitrary, discriminatory, or in bad faith."  See Vaca v. Sipes, 386 U.S. 171, 190

(1967).  First, Plaintiff fails to allege that he "at least attempt[ed] to exhaust exclusive grievance

and arbitration procedures established by the bargaining agreement," as required to state a claim

for breach of the DFR.  See id. at 184.  And his conclusory allegations (see Am. Compl. ¶¶ 162-

63) are insufficient to excuse exhaustion, see Hudson v. Wine Merchants, 1996 U.S. Dist. Lexis

18663, at *9 (W.D.N.Y. Dec. 11, 1996).

Thus, Plaintiff's DFR claim fails because he fails to allege that he requested any action

from the District Council with regard to his alleged "terminations."  See Flanigan v. Int'l Bhd. of

Teamsters, Local No. 671, 942 F.2d 824, 829 (2d Cir. 1991) ("[b]ecause appellants did not ask

the Union to process a grievance on [an] issue, they cannot complain that the Union failed to

represent them properly"); Goodman v. Port Auth. of N.Y. & N.J., 2011 U.S. Dist. Lexis 86010,

at *13 (S.D.N.Y. Aug. 4, 2011) (same).

In addition, Plaintiff's claim of "collusion" makes no sense and is utterly conclusory.

Without a shred of factual support, Plaintiff alleges that "defendant employers colluded with

Geiger and his cronies to fire plaintiff from jobs as part of the continuing retaliation campaign."

(Am. Compl. ¶ 95.)  He then lists a number of jobs for which he claims he was hired by

individual Contractor Defendants and later, allegedly "in collusion with D[istrict] C[ouncil],"

terminated" for lack of work or experience.  (Id. ¶¶ 98-105, 154.)  Plaintiff's allegations showing

that he was hired multiple times by multiple employers (see id.)—sometimes multiple times by

the same employer (see id. ¶¶ 98, 102, 104)—undermine his claim that he was "blacklisted."

Moreover, Plaintiff's wholly conclusory allegations of "collusion" between the Unions and Contractor Defendants are insufficient to survive a motion to dismiss.  See Caldarera v. Int'l Longshoremen's Ass'n, Local 1, 2018 U.S. Dist. Lexis 111135, at *12-14 (S.D.N.Y. July 3, 2018) (granting motion to dismiss with prejudice § 301-DFR claim alleging that union colluded with employers to provide no-hire letter for worker in alleged punishment for him being a "troublemaker"), aff'd, 765 F. App'x 483 (2d Cir. 2019).  As in Caldarera, Plaintiff's "bare and speculative" allegations fail to "provide any details as to who perpetrated the alleged collusion, how, or when."  See id., at *13-14 (emphasis added).  And,

> 'in the absence of subsidiary allegations fleshing out an agreement to retaliate against [him], the bare and conclusory allegation that [Defendant] manifested bad faith by conspiring with [Plaintiff's employers] does not rise above Twombly's plausibility threshold.  Twombly requires more than a charge that something bad happened and a conclusory allegation that this bad thing was also illegal because it resulted from a malevolent conspiracy.'

Id. at *11-12 (quoting Bejjani, 2013 U.S. Dist. Lexis 90467, at *43).

Plaintiff's hybrid § 301-DFR claim should be dismissed because the Amended Complaint offers nothing beyond bare and conclusory allegations of union-employer "collusion" to terminate Plaintiff from certain jobs  See, e.g., Williams v. Metro-North R.R., 2020 U.S. Dist. Lexis 53914, at *37 (S.D.N.Y. Mar. 27, 2020) (conclusory allegation that union acted "in collusion" with employer insufficient to survive motion to dismiss); Forkin v. Local 804 Union (IBT), 394 F. Supp. 3d 287, 303 (E.D.N.Y. 2019) (same).

C.    EST Geiger cannot be a defendant to a duty of fair representation claim.

While it is unclear if Plaintiff intends to bring a DFR claim against EST Joseph Geiger, Geiger is "immune from unfair representation claims" because only unions as entities may be subject to DFR claims.  See Morris v. Local 819, Int'l Bhd. of Teamsters, 169 F.3d 782, 784 (2d Cir. 1999); see also Szymanski v. Local 3, IBEW, 668 F. App'x 379, 380 (2d Cir. 2016) ("DFR

claims may not be brought against a union's agents or members").  Plaintiff does not include
Geiger in his allegation that "UBC and D[istrict] C[ouncil] breached their duty of fair
representation to plaintiff."  (Am. Compl. ¶ 192.)  But his § 301-DFR claim contains allegations
as against undifferentiated "defendants."  (See id. ¶¶ 194-95.)  Accordingly, to the extent that
Plaintiff intends to bring a DFR claim against Geiger, that claim must be dismissed.

## POINT III
## THE REQUEST FOR A PRELIMINARY INJUNCTION SHOULD BE DENIED.

Plaintiff's new request for a preliminary injunction "under LMRDA, the Consent Order,
the Stipulation, and FRCP 65" to "enjoin the CBA's operation" until the Delegates "conduct a
roll call vote to ratify or reject it" (Am. Compl. ¶¶ 197, 209), should be rejected out of hand.

> Generally, a party seeking a . . . preliminary injunction 'must demonstrate that it will
> suffer irreparable harm absent injunctive relief and either (1) that it is likely to
> succeed on the merits of the action, or (2) that there are sufficiently serious questions
> going to the merits to make them a fair ground for litigation, provided that the balance
> of hardships tips decidedly in favor of the moving party.'

Patrick v. Local 51, Am. Postal Workers Union, 2020 U.S. Dist. Lexis 23712, at *5-6 (S.D.N.Y.
Feb. 11, 2020) (citation omitted).  The Second Circuit's "stringent test" for a preliminary
injunction that "will alter, rather than maintain, the status quo" "requires the plaintiff to prove a
'clear or substantial likelihood of success on the merits.'"  Smith, 337 F. Supp. 2d at 584
(citation omitted).  Plaintiff fails to make a "clear showing that [he] is entitled to" this
"extraordinary remedy."  See Winter v. NRDC, Inc., 555 U.S. 7, 22 (2008).

First, Plaintiff cannot demonstrate a clear likelihood of success on the merits.  Plaintiff
fails to identify the provision of the LMRDA under which he seeks an injunction.  As discussed
above in Point I.A-B at pp. 4-6, Plaintiff's challenge to the ratification of the CBA is time-
barred, and his unsupported and conclusory allegations fail to state a plausible claim.  Moreover,
it is pure speculation that a roll-call vote would yield a different outcome than the unanimous

voice vote by which the CBA was ratified.  Plaintiff's challenge to the CBA ratification fails as a matter of law and cannot form the basis for an injunction altering the status quo.

Nor does Plaintiff identify any irreparable harm.  And delay in seeking an injunction "'suggests that there is . . . no irreparable injury.'"  Citibank, N.A. v. Citytrust, 756 F.2d 273, 277 (2d Cir. 1985) (citation omitted).  Plaintiff's 10-month delay in seeking an injunction belies any claimed irreparable harm and need for speedy relief.  See id. at 276-77 (more than 10-week delay after receiving direct knowledge and 9-month delay after receiving indirect knowledge of defendant's plans precluded preliminary injunction); Damone v. Teamsters Local 804, 2018 U.S. Dist. Lexis 224412, at *7 (E.D.N.Y. Oct. 30, 2018) (9-month delay precluded injunction).

In addition, the balance of hardships tips decidedly in the District Council Defendants' favor.  Undoing the CBA—a negotiated agreement with a multi-employer trade association that has been in effect for nearly a year and affects numerous construction projects throughout New York City (see, e.g., Am. Compl. ¶¶ 8, 10)—would necessarily have a profoundly disruptive effect on the construction industry in New York City, see Smith, 337 F. Supp.2d at 592-93.  Such disruption would be contrary to the fundamental federal labor policy promoting industrial peace and stability.  See, e.g., NLRB v. Am. Nat'l Ins. Co., 343 U.S. 395, 401-02 (1952).

## CONCLUSION

All claims against the District Council Defendants should be dismissed with prejudice.

Dated: New York, New York      By:  /s/ Gillian Costello
      July 20, 2020             Gillian Costello
                                   James M. Murphy
                                   SPIVAK LIPTON LLP
                                   1700 Broadway, 21st Floor
                                   New York, New York 10019
                                   Tel: (212) 765-2100
                                   gcostello@spivaklipton.com
                                   jmurphy@spivaklipton.com
                                   *Attorneys for the District Council Defendants*